UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

------------------------------------------------------------------------------------------------------------

Paul Miller,                                                           No. 4:20-cv-00173-SDJ-KPJ
                                                                                                    Jury
                                          Plaintiff,

                    v.

Target Card Services,

                                          Defendant.

---

## DEFENDANT TARGET ENTERPRISE, INC.'S MOTION FOR DISMISSAL AS TO SECOND AND THIRD COUNTS

---

### Motion

Defendant Target Enterprise, Inc. (misnamed as "Target Card Services"), moves this Court under Federal Rule of Civil Procedure 12(b)(6) for dismissal as to Plaintiff Paul Miller's second count, under the Texas Consumer Credit Reporting Act, and his third count, for invasion of privacy, for failure to state a claim upon which relief can be granted.[1]

---

[1]Mr. Miller's first claim is made under the Telephone Consumer Protection Act. This motion does not address that claim.

i

# Table of Contents

Table of Authorities ................................................................................................ iii

Issues        ...........................................................................................................1

Facts        ...........................................................................................................2

Legal Standard .......................................................................................................2

Argument  ...........................................................................................................3

I.      The complaint fails to state a claim under the Texas Debt Collection Act because the second count mostly alleges conduct that the statute doesn't prohibit. .............3

II.     The complaint fails to state a claim under the Texas Debt Collection Act for causing a telephone to ring "repeatedly or continuously" with intent to harass......8

        A.      The complaint alleges no conduct from which a factfinder could plausibly infer an intent to harass. ...........................................................................10

        B.      Call volume alone cannot constitute harassment. .....................................11

III.    The complaint fails to state a claim under the Texas Debt Collection Act because the complaint doesn't allege that the subject debt was a "consumer debt." ..........15

IV.     The complaint fails to state a claim for intrusion upon seclusion because the tort requires some "prying" into the plaintiff's private domain or affairs, and intrusion by means of debt-collection calls requires "extenuating circumstances," neither of which the complaint alleges. ................................................................................16

Conclusion ...........................................................................................................21

# Table of Authorities

## Cases

*Ammons v. Diversified Adjustment Serv., Inc.*,
No. 2:18-cv-06489-ODW-MAA (C.D. Cal. filed July 27, 2018)..................7, 8, 17, 18

*Arteaga v. Asset Acceptance, LLC*,
733 F. Supp. 2d 1218 (E.D. Cal. 2010).......................................................................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................2, 3

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................2, 3

*Birchler v. JPMorgan Chase Bank, N.A.*,
No. 4:14-cv-81, 2015 U.S. Dist. LEXIS 55885 (E.D. Tex. Apr. 29,
2015) ............................................................................................................................15

*Blanche v. First Nationwide Mortg. Corp.*,
74 S.W.3d 444 (Tex. App.—Dallas 2002)...................................................................20

*Borneisen v. Capital One Fin. Corp.*,
No. 8:09-CV-02539-T-17TGW, 2011 U.S. Dist. LEXIS 75712 (M.D.
Fla. July 13, 2011), *aff'd on other grounds*, 490 F. App'x 206 (11th
Cir. 2012) ....................................................................................................................12

*Bray v. Cadle Co.*,
No. 4:09-cv-663, 2010 U.S. Dist. LEXIS 109470 (S.D. Tex. Oct. 14,
2010) ......................................................................................................................19, 20

*Bridge v. Ocwen Federal Bank, FSB*,
681 F.3d 355 (6th Cir. 2012) ......................................................................................13

*Carman v. CBE Group, Inc.*,
782 F. Supp. 2d 1223 (D. Kan. 2011).....................................................................12, 14

*Charvat v. NMP, LLC*,
656 F.3d 440 (6th Cir. 2011) ......................................................................................10

*Clayton v. Asset Plus Cos., LP*,
No. 4:13-cv-2862, 2014 U.S. Dist. LEXIS 160087 (S.D. Tex. Nov. 14,
2014) ............................................................................................................................13

*Clingaman v. Certegy Payment Recovery Servs.*,
No. H-10-2483, 2011 U.S. Dist. LEXIS 56368 (S.D. Tex. May 26,
2011) ................................................................................................13, 14

*Cornhill Ins. PLC v. Valsamis, Inc.*,
No. 95-20898, 1997 U.S. App. LEXIS 12773 (5th Cir. Feb. 7, 1997) .......................19

*Daniel v. W. Asset Mgmt., Inc.*,
No. 11-11034, 2011 U.S. Dist. LEXIS 124788 (E.D. Mich. Oct. 28,
2011) ................................................................................................12

*Dickey v. State Farm Bank, F.S.B.*,
Civ. No. H-18-770, 2018 U.S. Dist. LEXIS 91036 (S.D. Tex. May 10,
2018) ................................................................................................15, 16

*EMC Mortg. Corp. v. Jones*,
252 S.W.3d 857 (Tex. App.—Dallas 2008)................................................................8

*Escamilla v. United States*,
No. EP-14-cv-00246-FM, 2015 U.S. Dist. LEXIS 184750 (W.D. Tex.
Jan. 29, 2015)................................................................................................20

*Fernandez-Montes v. Allied Pilots Ass'n*,
987 F.2d 278 (5th Cir. 1993) ................................................................................2

*Fiddick v. Bay Area Credit Serv., LLC*,
No. 3:18-cv-00416, 2019 U.S. Dist. LEXIS 70177 (S.D. Tex. Apr. 25,
2019) ................................................................................................9

*Fox v. Citicorp Credit Services, Inc.*,
15 F.3d 1507 (9th Cir. 1994) ................................................................................13

*Gilbert v. Carleton-Sonterra Partners Ltd.*,
No. 5:18-cv-201-DAE, 2018 U.S. Dist. LEXIS 227735 (W.D. Tex.
June 7, 2018)................................................................................................15

*Gorman v. Wolpoff & Abramson, LLP*,
435 F. Supp. 2d 1004 (N.D. Cal. 2006), *rev'd on other grounds*, 584
F.3d 1147 (9th Cir. 2009) ................................................................................10

*Household Credit Servs., Inc. v. Driscol*,
989 S.W.2d 72 (Tex. App.—Dallas 1998)................................................................20

*Hsu v. Enhanced Recover Co., LLC*,
No. 1:17-cv-128-RP, 2018 U.S. Dist. LEXIS 2082 (W.D. Tex. Jan. 5,
2018) ................................................................................................9

*Jackson v. Birmingham Bd. of Educ.*,
544 U.S. 167 (2005)..................................................................................................2

*Johnson v. JPMorgan Chase Bank, N.A.*,
No. 4:12-cv-285, 2013 U.S. Dist. LEXIS 81243 (E.D. Tex. Apr. 10,
2013) .........................................................................................................................8

*Kansa Reins. Co. v. Congressional Mortgage Corp.*,
20 F.3d 1362 (5th Cir. 1994) ....................................................................................2

*Lardner v. Diversified Consultants Inc.*,
No. 1:13-cv-22751-UU, 2014 U.S. Dist. LEXIS 64205 (S.D. Fla. May
1, 2014) ...................................................................................................................12

*Lee v. Credit Mgmt., LP*,
846 F. Supp. 2d 716 (S.D. Tex. 2011) .....................................................................10

*Lewis v. Portfolio Recovery Assocs., LLC*,
No. 1:13-cv-00043, 2015 U.S. Dist. LEXIS 129591 (M.D. Tenn. Sept.
25, 2015) .................................................................................................................12

*London v. Gums*,
No. H-12-3011, 2014 U.S. Dist. LEXIS 16149 (S.D. Tex. Feb. 10,
2014) .......................................................................................................................20

*Lopez v. Prof'l Collection Consultants*,
No. CV 11-3214 PSG, 2013 U.S. Dist. LEXIS 36612 (C.D. Cal. Feb.
26, 2013) .................................................................................................................12

*McDaniel v. JPMorgan Chase Bank, N.A.*,
No. 1:12-cv-392, 2012 U.S. Dist. LEXIS 174174 (E.D. Tex. Dec. 7,
2012) .......................................................................................................................15

*Millsap v. CCB Credit Services, Inc.*,
No. 07-11915, 2008 U.S. Dist. LEXIS 110149 (E.D. Mich. Sept. 30,
2008) .......................................................................................................................14

*Oppenheim v. I.C. Sys., Inc.*,
695 F. Supp. 2d 1303 (M.D. Fla. 2010), *aff'd*, 627 F.3d 833 (11th Cir.
2010) .......................................................................................................................19

*Putty v. Fannie Mae*,
No. 3:16-cv-2562-D, 2017 U.S. Dist. LEXIS 182671 (N.D. Tex. Nov.
3, 2017) ...................................................................................................................15

*Robinson v. Wells Fargo Bank, N.A.*,
  576 F. App'x 358 (5th Cir. 2014) ...............................................................13

*Rush v. Portfolio Recovery Assocs. LLC*,
  977 F. Supp. 2d 414 (D.N.J. 2013) ......................................................18, 19

*Saltzman v. I.C. Sys., Inc.*,
  No. 09-10096, 2009 U.S. Dist. LEXIS 90681 (E.D. Mich. Sept. 20,
  2009) .................................................................................................10, 11, 14

*Sanders v. Enhanced Recovery Co., LLC*,
  No. A-14-CA-1071-SS, 2015 U.S. Dist. LEXIS 4035 (W.D. Tex. Jan.
  14, 2015) .........................................................................................................3

*Shearer v. Shearer*,
  No. 12-14-00302-CV, 2016 Tex. App. LEXIS 5685 (Tex. App.—Tyler
  May 27, 2016) ...............................................................................................19

*Stuart v. AR Res., Inc.*,
  No. 10-3520, 2011 U.S. Dist. LEXIS 27025 (E.D. Pa. Mar. 16, 2011)................18, 19

*Summerlin v. Barrow*,
  No. 4:17-cv-1016-A, 2018 U.S. Dist. LEXIS 41123 (N.D. Tex. Mar.
  13, 2018) .......................................................................................................19

*Summit Health, Ltd. v. Pinhas*,
  500 U.S. 322 (1991).........................................................................................2

*Tex. Comptroller of Public Accounts v. Attorney Gen.*,
  244 S.W.3d 629 (Tex. App.—Austin 2008) ................................................19

*Tucker v. CBE Grp., Inc.*,
  710 F. Supp. 2d 1301 (M.D. Fla. 2010) ......................................................14

*Valle v. Nat'l Recovery Agency*,
  No. 8:10-cv-2775-T-23MAP, 2012 U.S. Dist. LEXIS 69564 (M.D.
  Fla. May 18, 2012).......................................................................................12

*Virnig v. TD Bank USA, N.A.*,
  No. 3:18-cv-00824-RGJ-CHL (W.D. Ky, filed Dec. 14, 2018) .................17

*Wilhite v. H.E. Butt Co.*,
  812 S.W.2d 1 (Tex. App.—Corpus Christi–Edinburg 1991) ......................19

**Statutes**

15 U.S.C. § 1692d..............................................................................................7

15 U.S.C. § 1692d(5).......................................................................................7, 9

15 U.S.C. § 1692f ..............................................................................................7

Tex. Fin. Code 392.001(1)................................................................................15

Tex. Fin. Code § 392.001(2).............................................................................15

Tex. Fin. Code § 392.001(5).............................................................................15

Tex. Fin. Code § 392.202(a).............................................................................11

Tex. Fin. Code § 392.202(c)(2).........................................................................11

Tex. Fin. Code § 392.202(d)(3).........................................................................11

Tex. Fin. Code § 392.302(2)...............................................................................5

Tex. Fin. Code § 392.302(4)................................................................1, 5, 9, 10

Tex. Fin. Code § 392.303(a)................................................................................6

Tex. Fin. Code § 392.303(a)(1)...........................................................................6

Tex. Fin. Code § 392.303(a)(2)...........................................................................6

Tex. Fin. Code § 392.303(a)(3)...........................................................................7

Texas Debt Collection Act....................................................................... *passim*

**Other Authorities**

Restatement (Second) of Torts § 652B cmt. b (1977) ......................................20

Restatement (Second) of Torts § 652B cmt. d, illus. 8 (1977) .........................18

**Issues**

1.    Five of the six ways in which the complaint alleges that Target violated the Texas Debt Collection Act allege conduct that the statute doesn't prohibit. Does the complaint state a claim as to that conduct upon which relief can be granted?

2.    Texas Debt Collection Act § 392.302(4) prohibits a debt collector from "causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number." The complaint alleges no conduct from which a factfinder could plausibly infer an intent to harass. Does the complaint state a claim under section 392.302(4) upon which relief can be granted?

3.    The first element of a claim under the Texas Debt Collection Act is that the subject debt is a "consumer debt." The complaint does not allege that the subject debt was a "consumer debt." Does the complaint state a claim under the Act upon which relief can be granted?

4.    The tort of intrusion upon seclusion requires some "prying" into the plaintiff's private domain or affairs, and intrusion by means of debt-collection calls requires "extenuating circumstances, such as . . . calls at odd hours or threatening personal violence." The complaint alleges neither prying nor extenuating circumstances. Does the complaint state a claim for intrusion upon seclusion upon which relief can be granted?

**Facts**

On a motion for dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the court "must assume the truth of the material facts as alleged in the complaint."[2] But the court need not accept "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," even when pleaded as factual allegations.[3] Likewise, "legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss,"[4] and a court "need not resolve unclear questions of law in favor of the plaintiff."[5]

**Legal Standard**

To survive a motion for dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[6] A claim has facial plausibility when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

---

[2]*Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 171 (2005) (quoting *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 325 (1991)).

[3]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4]*Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).

[5]*Kansa Reins. Co. v. Congressional Mortgage Corp.*, 20 F.3d 1362, 1366 (5th Cir. 1994).

[6]*Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Twombly*, 550 U.S. at 555–56.

2

for the misconduct alleged."[7] When a plaintiff has not "nudged [his] claims across the line from conceivable to plausible," then dismissal is mandatory.[8]

## Argument

Mr. Miller's complaint asserts three claims: count I, a federal-law claim under the Telephone Consumer Protection Act;[9] count II, a state statutory claim under the Texas Debt Collection Act;[10] and count III, a state common-law claim for invasion of privacy.[11] This motion concerns the second and third counts only; it does not concern count I, the claim under the Telephone Consumer Protection Act.

I.     **The complaint fails to state a claim under the Texas Debt Collection Act because the second count mostly alleges conduct that the statute doesn't prohibit.**

The complaint alleges in paragraph 31 that Target violated the Texas Debt Collection Act in six ways:

---

[7]*Iqbal*, 129 S. Ct. at 1949.

[8]*Twombly*, 550 U.S. at 570.

[9]Compl. [ECF Doc. 1], ¶¶ 26–29 at 4–5.

[10]*Id.*, ¶¶ 30–33 at 6–7. The complaint refers to the statute as the "Texas Fair Debt Collection Practices Act" or "TFDCPA." *See id.*, ¶ 2 at 1; *id.*, ¶ 31 at 6. The statute does not have an official short title, and courts have referred to it both as the Texas Debt Collection Act and as the Texas Fair Debt Collection Practices Act. *See Sanders v. Enhanced Recovery Co., LLC*, No. A-14-CA-1071-SS, 2015 U.S. Dist. LEXIS 4035, at *4 (W.D. Tex. Jan. 14, 2015). To minimize confusion with the federal Fair Debt Collection Practices Act, this motion refers to the Texas statute as the Texas Debt Collection Act. *See id.*, 2015 U.S. Dist. LEXIS 4035, at *3–5.

[11]Compl., ¶¶ 34–37 at 7–8.

Defendant violated the TFDCPA. Defendant's violations include, but are not limited to, the following:

a.  Defendant violated Tex. Fin. Code 392.302(4) by causing a telephone to ring repeatedly or continuously to annoy the person called; and

b.  Defendant violated Tex. Fin. Code 392.302(2) by communicating, by telephone or in person, with the debtor with such frequency as to be unreasonably [sic] and to constitute a harassment to the debtor under the circumstances; and

c.  Defendant violated Tex. Fin. Code 392.303 by collecting or attempting to collect a consumer debt without complying with the provisions of Section 1692b to 1692j, inclusive of. . . . Title 15 of the United State Code (Fair Debt Collection Practices Act).

d.  Defendant violated Tex. Fin. Code 392.303 by violating 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of the alleged debt; and

e.  Defendant violated Tex. Fin. Code 392.303 by violating 15 U.S.C. § 1692d(5) by causing Plaintiff's phone to ring or engaging Plaintiff in telephone conversations repeatedly;

f.  Defendant violated Tex. Fin. Code 392.303 by violating 15 U.S.C. § 1692f by using unfair or unconscionable means in connection with the collection of an alleged debt.[12]

The problem with those allegations is that, except for paragraph 31(a), they allege conduct that the statute doesn't prohibit — indeed, conduct that the statute doesn't even mention. Paragraph 31(a) cites Tex. Fin. Code § 392.302(4), which does prohibit a debt collector from "causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called

---

[12]Compl. [ECF Doc. 1], ¶ 31 at 6–7.

4

number."[13] (More about that prohibition later.) But none of paragraph 31's other allegations allege any conduct the Texas Debt Collection Act prohibits.

Complaint ¶ 31(b) alleges that Target "violated Tex. Fin. Code 392.302(2) by communicating, by telephone or in person, with the debtor with such frequency as to be unreasonably [sic] and to constitute a harassment to the debtor under the circumstances." But section 392.302(2) prohibits a debt collector from "placing telephone calls without disclosing the name of the individual making the call and with the intent to annoy, harass, or threaten a person at the called number."[14] The complaint's allegation isn't a typographical error, citing the wrong statutory provision: no prohibition of the kind that paragraph 31(b) alleges appears anywhere in the Texas Debt Collection Act, which doesn't use the word "frequency" at all.

Complaint ¶ 31(c) alleges that Target "violated Tex. Fin. Code 392.303 by collecting or attempting to collect a consumer debt without complying with the provisions of Section 1692b to 1692j, inclusive of. . . . Title 15 of the United State Code (Fair Debt Collection Practices Act)." But neither section 392.303 nor any other provision in the Texas Debt Collection Act requires compliance with the federal Fair Debt Collection Practices Act.

Complaint ¶ 31(d) alleges that Target "violated Tex. Fin. Code 392.303 by violating 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of the alleged

---

[13]Tex. Fin. Code § 392.302(4).

[14]Tex. Fin. Code § 392.302(2).

5

debt." But neither section 392.303 nor any other provision in the Texas Debt Collection Act requires compliance with 15 U.S.C. § 1692d, or contains any prohibition of the conduct that paragraph 31(d) alleges. The Act doesn't use the word "consequence" at all.

Complaint ¶ 31(e) alleges that Target "violated Tex. Fin. Code 392.303 by violating 15 U.S.C. § 1692d(5) by causing Plaintiff's phone to ring or engaging Plaintiff in telephone conversations repeatedly." But neither section 392.303 nor any other provision in the Texas Debt Collection Act requires compliance with 15 U.S.C. § 1692d(5).

Complaint ¶ 31(f) alleges that Target "violated Tex. Fin. Code 392.303 by violating 15 U.S.C. § 1692f by using unfair or unconscionable means in connection with the collection of an alleged debt." But neither section 392.303 nor any other provision in the Texas Debt Collection Act requires compliance with 15 U.S.C. § 1692f. Section 392.303(a) does provide that "[i]n debt collection, a debt collector may not use unfair or unconscionable means that employ the following practices,"[15] but enumerates three specific practices[16] that have nothing to do with the telephone calls that are the complaint's subject matter.

_____

[15]Tex. Fin. Code § 392.303(a).

[16]The practices are "seeking or obtaining a written statement or acknowledgment in any form that specifies that a consumer's obligation is one incurred for necessaries of life if the obligation was not incurred for those necessaries," Tex. Fin. Code § 392.303(a)(1); "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation," Tex. Fin. Code § 392.303(a)(2); and "collecting or attempting to collect an obligation under a check, draft, debit payment, or credit card payment," Tex. Fin. Code § 392.303(a)(3).

Mr. Miller's attorneys probably didn't manufacture those off-base allegations out of whole cloth. The allegations refer to prohibitions under *California* law; paragraph 31 (along with several other allegations in Mr. Miller's complaint) appears to have been cut and pasted from a complaint that Mr. Miller's law firm used in a California case, *Ammons v. Diversified Adjustment Service, Inc.*,[17] which includes these remarkably similar allegations:

> Defendant violated the RFDCPA [Rosenthal Fair Debt Collection Practices Act, California's consumer-debt-collection-practices statute]. Defendant's violations include, but are not limited to, the following:
>
> d.   Defendant violated Cal. Civ. Code § 1788.11(d) by causing a telephone to ring repeatedly or continuously to annoy the person called;
>
> e.   Defendant violated CAL. CIV. CODE § 1788.17 by collecting or attempting to collect a consumer debt without complying with the provisions of Sections 1692b to 1692j, inclusive, of . . . Title 15 of the United States Code (Fair Debt Collection Practices Act).
>
>> i.    Defendant violated CAL. CIV. CODE § 1788.17 by violating 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of the alleged debt; and
>>
>> ii.   Defendant violated CAL. CIV. CODE § 1788.17 by violating 15 U.S.C. § 1692d(5) by causing Plaintiff's phone to ring or engaging Plaintiff in telephone conversations repeatedly;
>>
>> iii.  Defendant violated CAL. CIV. CODE § 1788.17 by violating 15 U.S.C. § 1692f by using unfair or unconscionable means in connection with the collection of an alleged debt; . . . .[18]

---

[17] *Ammons v. Diversified Adjustment Serv., Inc.*, No. 2:18-cv-06489-ODW-MAA (C.D. Cal. filed July 27, 2018).

[18] Compl. [*Ammons* ECF Doc. 1], ¶ 46 at 7–8.

Mr. Miller's attorneys appear to have lifted the Calfornia statutory citations from the *Ammons* complaint, and swapped them out for the Texas statutory citations in Mr. Miller's complaint, without checking whether the cited laws actually contained the same substantive prohibitions. Texas law definitely is not identical to California law, and Target cannot be liable to a Texas plaintiff for allegedly not complying with California law.

II.    **The complaint fails to state a claim under the Texas Debt Collection Act for causing a telephone to ring "repeatedly or continuously" with intent to harass.**

Texas has long recognized "unreasonable collection" as an intentional tort. The tort required proof that a defendant's debt-collection efforts "amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm."[19] The Texas Debt Collection Act "is the statutory embodiment of common law unreasonable collection practices and prohibits use of deceptive means, making misrepresentations, harassment, and threats in the course of collecting a consumer debt."[20]

Texas Debt Collection Act [Tex. Fin. Code] § 392.302(4) prohibits a debt collector from "causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called

---

[19]*Johnson v. JPMorgan Chase Bank, N.A.*, No. 4:12-cv-285, 2013 U.S. Dist. LEXIS 81243, at *36–37 (E.D. Tex. Apr. 10, 2013) (quoting *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.—Dallas 2008)).

[20]*Id.*, 2013 U.S. Dist. LEXIS 81243, at *37.

number."[21] That prohibition is the Act's only provision whose violation Mr. Miller actually alleges. But his complaint fails to state a claim even as to that prohibition because the complaint alleges no conduct from which a factfinder could plausibly infer an intent to harass, and because call volume alone cannot constitute harassment.

Section 392.302(4) is substantially similar to the corresponding federal statute, 15 U.S.C. § 1692d(5), which likewise prohibits "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."[22] Where the Texas debt-collection statute is practically the same as its federal counterpart, a court applying the Texas statute may look to cases applying the federal statute for guidance: "Because the FDCPA and TDCA are isomorphic (that is, they share the same general structure but are identified by different names), the same analysis this Court applied to assess the sufficiency of the FDCPA claim will be utilized to determine the adequacy of the TDCA claim."[23]

A.     **The complaint alleges no conduct from which a factfinder could plausibly infer an intent to harass.**

The statute prohibits a debt collector from "causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, *with the intent to*

---

[21]Tex. Fin. Code § 392.302(4).

[22]15 U.S.C. § 1692d(5).

[23]*Fiddick v. Bay Area Credit Serv., LLC*, No. 3:18-cv-00416, 2019 U.S. Dist. LEXIS 70177, at *12 (S.D. Tex. Apr. 25, 2019); *accord Hsu v. Enhanced Recover Co., LLC*, No. 1:17-cv-128-RP, 2018 U.S. Dist. LEXIS 2082, at *17 (W.D. Tex. Jan. 5, 2018) ("because the language from each provision closely mirrors the language from the

*harass* a person at the called number."[24] The complaint alleges no conduct from which a factfinder could plausibly infer an intent to harass.

The complaint does allege that Target's calls were made "intentionally with the purpose of coercing Plaintiff to pay the alleged debt."[25] But it is well established that a creditor is entitled to contact a delinquent debtor in an attempt to collect the delinquent balance: "[a] creditor has a right to take reasonable action to pursue his debtor and persuade payment."[26]

The complaint also alleges that, in a single instance, "Plaintiff asked for calls to his cell phone to cease and for Defendant to only contact him by mail."[27] But the debt-collection statutes do not entitle a debtor to force a creditor to stop contacting him, or to contact him only in a particular way, simply by asking.[28] The Texas Debt Collection Act does specify certain circumstances under which a creditor must "cease collection efforts,"

---

corresponding provisions in the FDCPA, the Court will interpret the TDCA provisions at issue here in the same fashion as it interprets their federal counterparts").

[24] Tex. Fin. Code § 392.302(4) (emphasis added).

[25] Compl. [ECF Doc. 1], ¶ 32 at 7.

[26] *Charvat v. NMP, LLC*, 656 F.3d 440, 453 (6th Cir. 2011); *see Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 725 (S.D. Tex. 2011) (citing *Gorman v. Wolpoff & Abramson, LLP*, 435 F. Supp. 2d 1004, 1012 (N.D. Cal. 2006), *rev'd on other grounds*, 584 F.3d 1147 (9th Cir. 2009), for the proposition that the debt-collection statutes are not intended "to completely bar any debt collection calls"); *Saltzman v. I.C. Sys., Inc.*, No. 09-10096, 2009 U.S. Dist. LEXIS 90681, at *22 (E.D. Mich. Sept. 20, 2009) ("the FDCPA does not prohibit . . . legitimate attempts to contact a debtor").

[27] Compl., ¶ 19 at 3.

[28] *See Saltzman*, 2009 U.S. Dist. LEXIS 90681, at *20–21 ("Although Plaintiff alleges that she requested Defendant to stop calling her, she did not send Defendant a

all of which involve the correction of disputed information in a third-party debt collector's or a credit bureau's files.[29] The complaint alleges no such circumstance.

As long as the creditor is not acting "with the intent to harass a person at the called number," the Act does not prohibit a creditor from calling a debtor about a delinquent debt even if the debtor prefers not to get such calls. An intent to collect is not an intent to harass. The complaint alleges no conduct from which a factfinder could plausibly infer an intent to harass.

### B.    Call volume alone cannot constitute harassment.

The complaint alleges that, on six days in July, August, and December 2019, "Defendant called Plaintiff four (4) times,"[30] and that "[b]etween July 5, 2019 and December 26, 2019, following Plaintiff's request for all calls to cease, Defendant contacted Plaintiff no less than two hundred and thirty (230) times."[31] The complaint does not allege that Target reached Mr. Miller except for the one conversation on July 5, 2010.[32] The complaint does not allege that any call occurred at an inconvenient time or place, or involved any harrassing, offensive, profane, rude, threatening, or other egregous conduct.

---

cease and desist letter, dispute the amount owed, or provide evidence that Defendant has acted in a manner that would be actionable as harassment, oppression or abuse.").

[29]See Tex. Fin. Code § 392.202(a); Tex. Fin. Code § 392.202(c)(2); Tex. Fin. Code § 392.202(d)(3).

[30]Compl. [ECF Doc. 1], ¶ 21 at 4.

[31]Id., ¶ 22.

[32]See id., ¶ 17.

11

Courts around the country have repeatedly held that call volume alone cannot constitute harassment without some other harassing conduct: "proof of numerous calls alone does not create a jury issue where the creditor calls only to inform or remind the debtor of the debt, to determine reasons for nonpayment, to negotiate differences or to persuade the debtor to pay without litigation."[33] The U.S. Court of Appeals for the Fifth Circuit has held that the same rule applies under the Texas Debt Collection Act: "courts generally require both a great volume of phone calls and extenuating circumstances, such as making those calls at odd hours or threatening personal violence."[34] Another federal district court in Texas has likewise held that "where courts have found that plaintiffs have stated a claim for harassment or abuse, a high volume of phone calls is typically

---

[33] *Borneisen v. Capital One Fin. Corp.*, No. 8:09-CV-02539-T-17TGW, 2011 U.S. Dist. LEXIS 75712, at *34 (M.D. Fla. July 13, 2011), *aff'd on other grounds*, 490 F. App'x 206 (11th Cir. 2012); *accord Lewis v. Portfolio Recovery Assocs., LLC*, No. 1:13-cv-00043, 2015 U.S. Dist. LEXIS 129591, at *19 (M.D. Tenn. Sept. 25, 2015); *Lardner v. Diversified Consultants Inc.*, No. 1:13-cv-22751-UU, 2014 U.S. Dist. LEXIS 64205, at *23–25 (S.D. Fla. May 1, 2014) ("Summary judgment is routinely granted in favor of debt collectors where the party alleging a violation of the FDCPA does not present evidence of harassing conduct other than a high volume of calls."); *Lopez v. Prof'l Collection Consultants*, No. CV 11-3214 PSG (PLAx), 2013 U.S. Dist. LEXIS 36612, at *8 (C.D. Cal. Feb. 26, 2013) ("without providing evidence that Defendant called Plaintiff immediately after hanging up, called at odd hours, called at the debtor's place of employment, or called multiple times in a single day, the number of phone calls alone does not create a triable issue of fact"); *Valle v. Nat'l Recovery Agency*, No. 8:10-cv-2775-T-23MAP, 2012 U.S. Dist. LEXIS 69564, at *4 (M.D. Fla. May 18, 2012); *Daniel v. W. Asset Mgmt., Inc.*, No. 11-11034, 2011 U.S. Dist. LEXIS 124788, at *15 (E.D. Mich. Oct. 28, 2011) ("Plaintiff must offer evidence beyond the mere number of calls to support her allegation that the telephone calls were harassing, oppressive, or abusive."); *Carman v. CBE Group, Inc.*, 782 F. Supp. 2d 1223, 1230 (D. Kan. 2011); *Arteaga v. Asset Acceptance, LLC*, 733 F. Supp. 2d 1218, 1238 (E.D. Cal. 2010).

[34] *Robinson v. Wells Fargo Bank, N.A.*, 576 F. App'x 358, 362 (5th Cir. 2014).

accompanied by allegations of other objectionable conduct,"[35] such as "threatened foreclosure; assessed monthly late fees; and reported derogatory information to the credit reporting agencies"[36] or "[t]hreatening and intimidating calls to a consumer at an inconvenient time or place."[37]

Courts that have considered debt-collection claims based on call volume alone have held that such claims are insufficient as a matter of law. The complaint alleges that Target made 230 calls to Mr. Miller over a nearly six-month period[38] — an average of about 1.3 calls per day — and called as often as four times per day, although only on six days.[39] The complaint alleges only a single instance where Target actually reached him.[40] Another federal court in Texas held in *Clingaman v. Certegy Payment Recovery Services* that, where the number of calls — including calling up to four times a day — was the "sole basis" for a claim of harassment, the claim failed as a matter of law.[41] The *Clingaman* court cited other cases where the defendant was entitled to judgment for

---

[35]*Clayton v. Asset Plus Cos., LP*, No. 4:13-cv-2862, 2014 U.S. Dist. LEXIS 160087, at *7 (S.D. Tex. Nov. 14, 2014).

[36]*Id.* (quoting *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 357 (6th Cir. 2012)).

[37]*Id.* (quoting *Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994)).

[38]Compl. [ECF Doc. 1], ¶ 22 at 4.

[39]*Id.*, ¶ 21.

[40]*Id.*, ¶¶ 17–19 at 3.

[41]*Clingaman v. Certegy Payment Recovery Servs.*, No. H-10-2483, 2011 U.S. Dist. LEXIS 56368, at *11–12 (S.D. Tex. May 26, 2011) ("the most calls Certegy made in one day was four").

calling up to seven times a day,[42] for calling 149 times in two months (averaging 2.4 calls per day),[43] and for calling up to 60 times in a five-week period (averaging 1.7 calls per day).[44] The *Clingaman* court noted that the pattern of calls "suggests a 'difficulty of reaching Plaintiff, rather than an intent to harass'"[45] — "a legitimate, albeit persistent, effort to reach [the debtor]."[46]

Call volume alone cannot constitute harassment. The complaint alleges no conduct from which a factfinder can plausibly infer an intent to harass. The complaint fails to state a claim under the Texas Debt Collection Act for causing a telephone to ring "repeatedly or continuously" with intent to harass.

III. **The complaint fails to state a claim under the Texas Debt Collection Act because the complaint doesn't allege that the subject debt was a "consumer debt."**

The Texas Debt Collection Act applies only to the collection of consumer debts: the Act defines "debt collection" as "an action, conduct, or practice in collecting, or in soliciting for collection, *consumer debts* that are due or alleged to be due a creditor."[47]

---

[42] *Id.*, 2011 U.S. Dist. LEXIS 56368, at *12 (citing *Tucker v. CBE Grp., Inc.*, 710 F. Supp. 2d 1301, 1303 (M.D. Fla. 2010)).

[43] *Id.* (citing *Carman v. CBE Grp., Inc.*, 782 F. Supp. 2d 1223 (D. Kan. 2011)).

[44] *Id.* (citing *Saltzman v. I.C. Sys., Inc.*, 2009 U.S. Dist. LEXIS 90681, 2009 WL 3190359, at *6 (E.D. Mich. Sept. 30, 2009)).

[45] *Id.* at *12–13 (quoting *Saltzman*, 2009 U.S. Dist. LEXIS 90681, at *21 (quoting *Millsap v. CCB Credit Services, Inc.*, No. 07-11915, 2008 U.S. Dist. LEXIS 110149, at *24 (E.D. Mich. Sept. 30, 2008))).

[46] *Saltzman*, 2009 U.S. Dist. LEXIS 90681, at *22.

[47] Tex. Fin. Code § 392.001(5) (emphasis added).

14

The Act defines a "consumer debt" as "an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction."[48] The first element of a claim for alleged violation of the Act is that the subject debt is a "consumer debt": "To plead a viable TDCA claim, a plaintiff must set forth facts showing that: (1) the debt at issue is a consumer debt . . . ."[49]

The complaint does not allege that the subject debt was a "consumer debt." The complaint does allege that "Plaintiff is a consumer as defined by the TFDCPA, Tex. Fin. Code 392.001(1),"[50] which defines a "consumer" as "an individual who has a consumer debt." But that allegation is insufficient: every individual alive spends money "for personal, family, or household purposes" and, as soon as he or she engages in such a transaction on credit, he or she becomes a "consumer." That a plaintiff is a consumer with respect to some transaction somewhere does not mean that he or she is a consumer with respect to every transaction in his or her life; a "consumer" can also engage in transactions for business or commercial purposes, without turning the obligations resulting from those transactions into "consumer debts." The same individual, in a single shopping trip, might engage in a transaction that results in a consumer debt while also

---

[48]Tex. Fin. Code § 392.001(2).

[49]*Dickey v. State Farm Bank, F.S.B.*, Civ. No. H-18-770, 2018 U.S. Dist. LEXIS 91036, at *12 (S.D. Tex. May 10, 2018); *accord Gilbert v. Carleton-Sonterra Partners Ltd.*, No. 5:18-cv-201-DAE, 2018 U.S. Dist. LEXIS 227735, at *6 (W.D. Tex. June 7, 2018); *Birchler v. JPMorgan Chase Bank, N.A.*, No. 4:14-cv-81, 2015 U.S. Dist. LEXIS 55885, at *12 (E.D. Tex. Apr. 29, 2015); *Putty v. Fannie Mae*, No. 3:16-cv-2562-D, 2017 U.S. Dist. LEXIS 182671, at *6 (N.D. Tex. Nov. 3, 2017); *McDaniel v. JPMorgan Chase Bank, N.A.*, No. 1:12-cv-392, 2012 U.S. Dist. LEXIS 174174, at *21 (E.D. Tex. Dec. 7, 2012).

making non-consumer purchases. Any product in the world can be used in a commercial or industrial setting at least as well as for "personal, family or household purposes."

The pertinent question — the question that determines whether a claim is viable under the Texas Debt Collection Act — is not whether the plaintiff is a consumer, but whether "*the debt at issue* is a consumer debt."[51] The complaint doesn't allege that the subject debt was a "consumer debt." The complaint therefore fails to state a claim under the Texas Debt Collection Act.

IV. **The complaint fails to state a claim for intrusion upon seclusion because the tort requires some "prying" into the plaintiff's private domain or affairs, and intrusion by means of debt-collection calls requires "extenuating circumstances," neither of which the complaint alleges.**

Finally, Mr. Miller's third claim — for invasion of privacy — is based on the same calls as his claims under the Telephone Consumer Protection Act and the Texas Debt Collection Act:

34.    Plaintiff incorporates herein by reference all of the above paragraphs of this complaint as though fully set forth herein at length.

35.    Restatement of the Law, Second, Torts, § 652(b) defines intrusion upon seclusion as, "One who intentionally intrudes . . . upon the solitude or seclusion of another, or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person."

36.    Defendant violated Plaintiff's privacy. Defendant's violations include, but are not limited to, the following:

a.    Defendant intentionally intruded, physically or otherwise, upon Plaintiff's solitude and seclusion by engaging in harassing phone calls in an attempt to collect on an alleged debt despite numerous requests for the calls to cease.

---

[50]Compl. [ECF Doc. 1], ¶ 8 at 2.

[51]*Dickey*, 2018 U.S. Dist. LEXIS 91036, at *12 (emphasis added).

16

      b.      The number and frequency of the telephone calls to Plaintiff by Defendant after multiple requests for the calls to cease constitute an intrusion on Plaintiff's privacy and solitude.

      c.      Defendant [sic] conduct would be highly offensive to a reasonable person as Plaintiff received calls that often-interrupted [sic] Plaintiff's work and sleep schedule.

      d.      Defendant [sic] acts, as described above, were done intentionally with the purpose of coercing Plaintiff to pay the alleged debt.

37.      As a result of Defendant's violations of Plaintiffs privacy, Defendant is liable to Plaintiff for actual damages.[52]

The complaint adds no new facts in support of the Texas common-law claim.[53]

The Restatement is both clear and explicit that an unwanted communication in an attempt to collect a debt is not necessarily an invasion of privacy, even where the creditor knows that the communication is unwanted: "A, a landlord, calls upon B, his tenant, at nine o'clock on Sunday morning, to demand payment of the rent, although he knows that B is not ready to pay it and that B objects to such a visit on Sunday. B is seriously

---

[52]Compl. [ECF Doc. 1], ¶¶ 34–37 at 7–8.

[53]Paragraph 36(a) refers to "numerous requests for the calls to cease," and paragraph 36(b) refers to "multiple requests," even though the section titled "Factual Allegations" alleges only a single such request. *See* Compl., ¶¶ 17–19 at 3. Paragraph 36 appears to have been cut and pasted from earlier complaints by Mr. Miller's law firm. For example, paragraph 36(a) matches a paragraph from the *Ammons* complaint, *see* Compl. [*Ammons* ECF Doc. 1], ¶ 52(a) at 9, *Ammons v. Diversified Adjustment Serv., Inc.*, No. 2:18-cv-06489-ODW-MAA (C.D. Cal. filed July 27, 2018) — a paragraph that also appears in another case that Target and its credit-card issuer TD Bank USA, N.A., are defending against a plaintiff represented by the same firm. *See* Compl. [ECF Doc. 1], ¶ 34(a) at 6, *Virnig v. TD Bank USA, N.A.*, No. 3:18-cv-00824-RGJ-CHL (W.D. Ky, filed Dec. 14, 2018). That case does allege more than one such request; this case does not. Mr. Miller's complaint's paragraphs 36(b)–(d) likewise match the *Ammons* complaint's paragraphs 52(b)–(d), practically word for word.

annoyed. This is not an invasion of B's privacy."[54] An invasion of privacy can occur only if "the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence."[55]

Nothing in the complaint suggests that Target's calls rose anywhere near the level that they became "a substantial burden to [Mr. Miller's] existence." The complaint alleges no such burden. Target called, on average, just over once a day; there was no day where Target tried the number more than four times. Target reached Mr. Miller only once.

Under the Restatement, debt-collection calls do not become a "substantial burden" merely because they are "persistent."[56] Nor do they become a "substantial burden" merely because they are "annoying, embarrassing, and upsetting" to the debtor.[57] An invasion of privacy does not occur unless "the facts clearly demonstrate outrageous, rather than annoying or upsetting, conduct."[58] For example, one court dismissed an invasion-of-privacy claim where a debt collector called up to six times per day over a

_____

[54]Restatement (Second) of Torts § 652B cmt. d, illus. 8 (1977).

[55]*Id.*

[56]*Rush v. Portfolio Recovery Assocs. LLC*, 977 F. Supp. 2d 414, 434 (D.N.J. 2013) ("a debt collector merely calling persistently does not by itself demonstrate a substantial burden on the recipient"); *Stuart v. AR Res., Inc.*, No. 10-3520, 2011 U.S. Dist. LEXIS 27025, at *18–21 (E.D. Pa. Mar. 16, 2011) (dismissing invasion-of-privacy claim despite allegations that debt collector called plaintiff persistently and used profane language).

[57]*Rush*, 977 F. Supp. 2d at 434 (quoting *Stuart*).

[58]*Id.*, 977 F. Supp. 2d at 436; *Oppenheim v. I.C. Sys., Inc.*, 695 F. Supp. 2d 1303, 1310 (M.D. Fla. 2010), *aff'd*, 627 F.3d 833 (11th Cir. 2010).

18

three-month period because "those calls did not rise to the requisite level of outrageous and unacceptable conduct contemplated by the tort of invasion of privacy based on intrusion."[59] The complaint alleges no such "outrageous" conduct.

Under Texas law, a claim for intrusion upon seclusion "is generally associated with either a physical invasion of a person's property or eavesdropping on another's conversation with the aid of wiretaps, microphones or spying."[60] The Restatement comments that an intrusion upon seclusion "may be by some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, [or] examining his private bank account,"[61] so one court has suggested that conduct such as "examining a person's bank records" without authorization may also constitute an intrusion upon seclusion.[62] But where the defendant

---

[59]*Oppenheim*, 695 F. Supp. 2d at 1310.

[60]*Cornhill Ins. PLC v. Valsamis, Inc.*, No. 95-20898, 1997 U.S. App. LEXIS 12773, at *11 (5th Cir. Feb. 7, 1997) (quoting *Wilhite v. H.E. Butt Co.*, 812 S.W.2d 1, 6 (Tex. App.—Corpus Christi–Edinburg 1991)); *Summerlin v. Barrow*, No. 4:17-cv-1016-A, 2018 U.S. Dist. LEXIS 41123, at * (N.D. Tex. Mar. 13, 2018) ("such an intrusion claim is typically associated with either a physical invasion of a person's property or eavesdropping"); *Bray v. Cadle Co.*, No. 4:09-cv-663, 2010 U.S. Dist. LEXIS 109470, at *47 (S.D. Tex. Oct. 14, 2010) ("[i]ntrusion upon seclusion is typically associated with either a physical invasion of a person's property or eavesdropping on another's conversation with the aid of wiretaps, microphones, or spying." (quoting *Tex. Comptroller of Public Accounts v. Attorney Gen.*, 244 S.W.3d 629, 636 (Tex. App.—Austin 2008)); *Shearer v. Shearer*, No. 12-14-00302-CV, 2016 Tex. App. LEXIS 5685, at *25 (Tex. App.—Tyler May 27, 2016).

[61]Restatement (Second) of Torts § 652B cmt. b (1977).

[62]*Bray*, 2010 U.S. Dist. LEXIS 109470, at *48.

has not physically entered the plaintiff's space, the tort requires some "prying" into the plaintiff's "private domain" or "private affairs."[63]

The complaint alleges no such "prying," only telephone calls made in a legitimate attempt to reach Mr. Miller about his delinquent account.

Where courts applying Texas law have entertained intrusion-upon-seclusion claims for debt-collection calls, the calls were accompanied by other "extenuating circumstances," such as "bomb and death threats,"[64] "the threat of jail,"[65] "calls . . . prior to normal waking or after normal retiring hours," or "a hostile, profane individual on the other end of the line."[66] The complaint alleges no such extenuating circumstances.

### Conclusion

The complaint fails to state a claim under the Texas Debt Collection Act because the second count mostly alleges conduct that the statute doesn't prohibit. The complaint also fails to state a claim under the Texas Debt Collection Act because the complaint doesn't allege that the subject debt was a "consumer debt."

The complaint fails to state a claim under the Texas Debt Collection Act for causing a telephone to ring "repeatedly or continuously" with intent to harass because the

---

[63]*London v. Gums*, No. H-12-3011, 2014 U.S. Dist. LEXIS 16149, at *38 (S.D. Tex. Feb. 10, 2014); *Shearer*, 2016 Tex. App. LEXIS 5685, at *25; *Blanche v. First Nationwide Mortg. Corp.*, 74 S.W.3d 444, 455 (Tex. App.—Dallas 2002).

[64]*Escamilla v. United States*, No. EP-14-cv-00246-FM, 2015 U.S. Dist. LEXIS 184750, at *16–17 (W.D. Tex. Jan. 29, 2015) (citing *Household Credit Servs., Inc. v. Driscol*, 989 S.W.2d 72, 85 (Tex. App.—Dallas 1998)).

[65]*London*, 2014 U.S. Dist. LEXIS 16149, at *39.

complaint alleges no conduct from which a factfinder could plausibly infer an intent to harass, and because call volume alone cannot constitute harassment.

The complaint fails to state a claim for intrusion upon seclusion because the tort requires some "prying" into the plaintiff's private domain or affairs, and intrusion by means of debt-collection calls requires "extenuating circumstances," neither of which the complaint alleges.

Therefore, Target respectfully asks that this Court dismiss Mr. Miller's second claim, under the Texas Debt Collection Act, and his third claim, for invasion of privacy, for failure to state a claim upon which relief can be granted.

June 1, 2020.

BARNES & THORNBURG LLP

/s/ Brian Melendez

_____

Brian Melendez, Minn. License No.
    0223633 (admitted pro hac vice), Lead
    Attorney
Suite 2800
225 South Sixth Street
Minneapolis, MN 55402-4662
Ph. 612.367.8734
Fax 612.333.6798
brian.melendez@btlaw.com

in association with

---

[66]*Driscol*, 989 S.W.2d at 85.

Lucas C. Wohlford, Texas Bar No.
   24070871
Suite 700
2121 North Pearl Street
Dallas, TX 75201-2469
Ph. 214.258.4106
Fax 214.258.4199
lwohlford@btlaw.com

Attorneys for Defendant
   Target Enterprise, Inc. (misnamed as
   "Target Card Services")

**Certificate of Service**

Service on known Filing Users will be automatically accomplished through the Notice of Electronic Filing. Each Party is represented by counsel, and each Party's counsel is a Filing User.

June 1, 2020.

BARNES & THORNBURG LLP

s/ Brian Melendez

_____

Brian Melendez, License No. 0223633
      (Minn.) (admitted pro hac vice)
Suite 2800
225 South Sixth Street
Minneapolis, MN 55402-4662
Ph. 612.367.8734
Fax 612.333.6798
brian.melendez@btlaw.com