UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

---------------------------------------------------------------------------------------------------------

Paul Miller,                                                    No. 4:20-cv-00173-SDJ-KPJ
                                                                                      Jury

                                   Plaintiff,

                    v.

Target Enterprise, Inc.,

                                   Defendant.

---

## DEFENDANT TARGET ENTERPRISE, INC.'S
## MOTION FOR DISMISSAL AS TO SECOND AND THIRD COUNTS

---

### Motion

Defendant Target Enterprise, Inc., moves this Court under Federal Rule of Civil Procedure 12(b)(6) for dismissal as to Plaintiff Paul Miller's second count, under the Texas Consumer Credit Reporting Act, and his third count, for invasion of privacy, for failure to state a claim upon which relief can be granted.[1]

This motion is made with respect to the First Amended Complaint (June 11, 2020) [ECF Doc. 10].

---

[1]Mr. Miller's first claim is made under the Telephone Consumer Protection Act. This motion does not address that claim.

i

# Table of Contents

Table of Authorities ..................................................................................................... iii

Issues    ...................................................................................................................1

Facts    ...................................................................................................................1

Legal Standard ...........................................................................................................2

Argument ..................................................................................................................3

I.    The amended complaint fails to state a claim under the Texas Debt Collection Act for causing a telephone to ring "repeatedly or continuously" with intent to harass. ..................................................................................................................3

    A.    The new allegation in the amended complaint about inconvenient timing is vague, conclusory, and subjective, and does not plausibly allege an intent to harass. .....................................................................................5

    B.    The amended complaint alleges no conduct from which a factfinder could plausibly infer an intent to harass. .............................................................9

    C.    Call volume alone cannot constitute harassment. .....................................10

II.    The amended complaint fails to state a claim for intrusion upon seclusion because the tort requires some "prying" into the plaintiff's private domain or affairs, and intrusion by means of debt-collection calls requires "extenuating circumstances," neither of which the complaint alleges. .............................................................14

Conclusion ................................................................................................................18

## Table of Authorities

**Cases**

*Arteaga v. Asset Acceptance, LLC*,
   733 F. Supp. 2d 1218 (E.D. Cal. 2010)......................................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................................2, 8

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................................2, 9

*Blanche v. First Nationwide Mortg. Corp.*,
   74 S.W.3d 444 (Tex. App.—Dallas 2002)..................................................................17

*Borneisen v. Capital One Fin. Corp.*,
   No. 8:09-CV-02539-T-17TGW, 2011 U.S. Dist. LEXIS 75712 (M.D.
   Fla. July 13, 2011), *aff'd on other grounds*, 490 F. App'x 206 (11th
   Cir. 2012) .....................................................................................................................11

*Bray v. Cadle Co.*,
   No. 4:09-cv-663, 2010 U.S. Dist. LEXIS 109470 (S.D. Tex. Oct. 14,
   2010) .............................................................................................................................17

*Bridge v. Ocwen Federal Bank, FSB*,
   681 F.3d 355 (6th Cir. 2012) .....................................................................................12

*Carman v. CBE Group, Inc.*,
   782 F. Supp. 2d 1223 (D. Kan. 2011)..................................................................12, 13

*Channell v. Citicorp Nat'l Servs., Inc.*,
   89 F.3d 379 (7th Cir. 1996) .........................................................................................9

*Charvat v. NMP, LLC*,
   656 F.3d 440 (6th Cir. 2011) .......................................................................................9

*Clayton v. Asset Plus Cos., LP*,
   No. 4:13-cv-2862, 2014 U.S. Dist. LEXIS 160087 (S.D. Tex. Nov. 14,
   2014) .............................................................................................................................12

*Clingaman v. Certegy Payment Recovery Servs.*,
   No. H-10-2483, 2011 U.S. Dist. LEXIS 56368 (S.D. Tex. May 26,
   2011) .............................................................................................................................13

*Cornhill Ins. PLC v. Valsamis, Inc.*,
  No. 95-20898, 1997 U.S. App. LEXIS 12773 (5th Cir. Feb. 7, 1997) ........................17

*Daniel v. W. Asset Mgmt., Inc.*,
  No. 11-11034, 2011 U.S. Dist. LEXIS 124788 (E.D. Mich. Oct. 28,
  2011) ................................................................................................................................11

*EMC Mortg. Corp. v. Jones*,
  252 S.W.3d 857 (Tex. App.—Dallas 2008)...............................................................3, 4

*Escamilla v. United States*,
  No. EP-14-cv-00246-FM, 2015 U.S. Dist. LEXIS 184750 (W.D. Tex.
  Jan. 29, 2015).................................................................................................................18

*Fernandez-Montes v. Allied Pilots Ass'n*,
  987 F.2d 278 (5th Cir. 1993) .........................................................................................2

*Fiddick v. Bay Area Credit Serv., LLC*,
  No. 3:18-cv-00416, 2019 U.S. Dist. LEXIS 70177 (S.D. Tex. Apr. 25,
  2019) .................................................................................................................................5

*Fox v. Citicorp Credit Services, Inc.*,
  15 F.3d 1507 (9th Cir. 1994) ...................................................................................7, 12

*Gorman v. Wolpoff & Abramson, LLP*,
  435 F. Supp. 2d 1004 (N.D. Cal. 2006), *rev'd on other grounds*, 584
  F.3d 1147 (9th Cir. 2009) ...............................................................................................9

*Household Credit Servs., Inc. v. Driscol*,
  989 S.W.2d 72 (Tex. App.—Dallas 1998)....................................................................18

*Hsu v. Enhanced Recover Co., LLC*,
  No. 1:17-cv-128-RP, 2018 U.S. Dist. LEXIS 2082 (W.D. Tex. Jan. 5,
  2018) .................................................................................................................................5

*Jackson v. Birmingham Bd. of Educ.*,
  544 U.S. 167 (2005)........................................................................................................1

*Johnson v. JPMorgan Chase Bank, N.A.*,
  No. 4:12-cv-285, 2013 U.S. Dist. LEXIS 81243 (E.D. Tex. Apr. 10,
  2013) ............................................................................................................................3, 4

*Kansa Reins. Co. v. Congressional Mortgage Corp.*,
  20 F.3d 1362 (5th Cir. 1994) .........................................................................................2

*Lardner v. Diversified Consultants Inc.*,
  No. 1:13-cv-22751-UU, 2014 U.S. Dist. LEXIS 64205 (S.D. Fla. May
  1, 2014) ......................................................................................................11

*Lee v. Credit Mgmt., LP*,
  846 F. Supp. 2d 716 (S.D. Tex. 2011) ........................................................9

*Lewis v. Portfolio Recovery Assocs., LLC*,
  No. 1:13-cv-00043, 2015 U.S. Dist. LEXIS 129591 (M.D. Tenn. Sept.
  25, 2015) ....................................................................................................11

*London v. Gums*,
  No. H-12-3011, 2014 U.S. Dist. LEXIS 16149 (S.D. Tex. Feb. 10,
  2014) ....................................................................................................17, 18

*Lopez v. Prof'l Collection Consultants*,
  No. CV 11-3214 PSG, 2013 U.S. Dist. LEXIS 36612 (C.D. Cal. Feb.
  26, 2013) ....................................................................................................11

*Millsap v. CCB Credit Services, Inc.*,
  No. 07-11915, 2008 U.S. Dist. LEXIS 110149 (E.D. Mich. Sept. 30,
  2008) ..........................................................................................................13

*Oppenheim v. I.C. Sys., Inc.*,
  695 F. Supp. 2d 1303 (M.D. Fla. 2010), *aff'd*, 627 F.3d 833 (11th Cir.
  2010) ..........................................................................................................16

*Robinson v. Wells Fargo Bank, N.A.*,
  576 F. App'x 358 (5th Cir. 2014) .........................................................7, 12

*Rush v. Portfolio Recovery Assocs. LLC*,
  977 F. Supp. 2d 414 (D.N.J. 2013) ............................................................16

*Saltzman v. I.C. Sys., Inc.*,
  No. 09-10096, 2009 U.S. Dist. LEXIS 90681 (E.D. Mich. Sept. 20,
  2009) ................................................................................................9, 10, 13

*Sanders v. Enhanced Recovery Co., LLC*,
  No. A-14-CA-1071-SS, 2015 U.S. Dist. LEXIS 4035 (W.D. Tex. Jan.
  14, 2015) ......................................................................................................3

*Shearer v. Shearer*,
  No. 12-14-00302-CV, 2016 Tex. App. LEXIS 5685 (Tex. App.—Tyler
  May 27, 2016) ............................................................................................17

*Sims v. City of Madisonville*,
    894 F.3d 632 (5th Cir. 2018) ..................................................................8

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ...............................................................8

*Stuart v. AR Res., Inc.*,
    No. 10-3520, 2011 U.S. Dist. LEXIS 27025 (E.D. Pa. Mar. 16, 2011)......................16

*Summerlin v. Barrow*,
    No. 4:17-cv-1016-A, 2018 U.S. Dist. LEXIS 41123 (N.D. Tex. Mar.
    13, 2018) ..........................................................................17

*Summit Health, Ltd. v. Pinhas*,
    500 U.S. 322 (1991) ..............................................................1

*Tex. Comptroller of Public Accounts v. Attorney Gen.*,
    244 S.W.3d 629 (Tex. App.—Austin 2008) ...........................................17

*Tucker v. CBE Grp., Inc.*,
    710 F. Supp. 2d 1301 (M.D. Fla. 2010) ..............................................13

*Valle v. Nat'l Recovery Agency*,
    No. 8:10-cv-2775-T-23MAP, 2012 U.S. Dist. LEXIS 69564 (M.D.
    Fla. May 18, 2012) ...............................................................11

*Walker v. Westlake Fin. Servs., LLC*,
    No. 19-cv-6921, 2020 U.S. Dist. LEXIS 105794 (N.D. Ill. June 17,
    2020) .............................................................................9

*Wilhite v. H.E. Butt Co.*,
    812 S.W.2d 1 (Tex. App.—Corpus Christi–Edinburg 1991) .............................17

**Statutes**

15 U.S.C. § 1692c(a)(1) ................................................................8

15 U.S.C. § 1692c(a)(3) ................................................................8

15 U.S.C. § 1692d(5) ...................................................................4

Fair Debt Collection Practices Act .....................................................7

Tex. Fin. Code § 392.202(a) ...........................................................10

Tex. Fin. Code § 392.202(c)(2) .........................................................................................10

Tex. Fin. Code § 392.202(d)(3) .........................................................................................10

Tex. Fin. Code § 392.302(4) ......................................................................................1, 4, 5

Texas Debt Collection Act........................................................................................ *passim*

**Other Authorities**

Restatement (Second) of Torts § 652B cmt. b (1977) .......................................................17

Restatement (Second) of Torts § 652B cmt. d, illus. 8 (1977) .........................................15

**Issues**

1.    Texas Debt Collection Act § 392.302(4) prohibits a debt collector from "causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number." The amended complaint alleges no conduct from which a factfinder could plausibly infer an intent to harass. Does the amended complaint state a claim under section 392.302(4) upon which relief can be granted?

2.    The tort of intrusion upon seclusion requires some "prying" into the plaintiff's private domain or affairs, and intrusion by means of debt-collection calls requires "extenuating circumstances," such as "bomb and death threats," "the threat of jail," or profanity. The amended complaint alleges neither prying nor extenuating circumstances. Does the amended complaint state a claim for intrusion upon seclusion upon which relief can be granted?

**Facts**

On a motion for dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the court "must assume the truth of the material facts as alleged in the complaint."[2] But the court need not accept "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," even when pleaded as factual

---

[2] *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 171 (2005) (quoting *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 325 (1991)).

allegations.[3] Likewise, "legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss,"[4] and a court "need not resolve unclear questions of law in favor of the plaintiff."[5]

## Legal Standard

To survive a motion for dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[6] A claim has facial plausibility when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[7] When a plaintiff has not "nudged [his] claims across the line from conceivable to plausible," then dismissal is mandatory.[8]

## Argument

Mr. Miller's amended complaint asserts three claims: count I, a federal-law claim under the Telephone Consumer Protection Act;[9] count II, a state statutory claim under the

---

[3]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4]*Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).

[5]*Kansa Reins. Co. v. Congressional Mortgage Corp.*, 20 F.3d 1362, 1366 (5th Cir. 1994).

[6]*Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Twombly*, 550 U.S. at 555–56.

[7]*Iqbal*, 556 U.S. at 678.

[8]*Twombly*, 550 U.S. at 570.

[9]Am. Compl. [ECF Doc. 10], ¶¶ 32–35 at 5–6.

Texas Debt Collection Act;[10] and count III, a state common-law claim for invasion of privacy.[11] This motion concerns the second and third counts only; it does not concern count I, the claim under the Telephone Consumer Protection Act.

I.    **The amended complaint fails to state a claim under the Texas Debt Collection Act for causing a telephone to ring "repeatedly or continuously" with intent to harass.**

Texas has long recognized "unreasonable collection" as an intentional tort. The tort required proof that a defendant's debt-collection efforts "amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm."[12] The Texas Debt Collection Act "is the statutory embodiment of common law unreasonable collection practices and prohibits use of deceptive means, making misrepresentations, harassment, and threats in the course of collecting a consumer debt."[13]

---

[10]*Id.*, ¶¶ 36–40 at 7. Count II's caption refers to the statute as the "Texas Fair Debt Collection Practices Act." *Id.* at 7. The statute does not have an official short title, and courts have referred to it both as the Texas Debt Collection Act and as the Texas Fair Debt Collection Practices Act. *See Sanders v. Enhanced Recovery Co., LLC*, No. A-14-CA-1071-SS, 2015 U.S. Dist. LEXIS 4035, at *4 (W.D. Tex. Jan. 14, 2015). To minimize confusion with the federal Fair Debt Collection Practices Act, this motion refers to the Texas statute as the Texas Debt Collection Act. *See id.*, 2015 U.S. Dist. LEXIS 4035, at *3–5.

[11]Am. Compl., ¶¶ 41–44 at 7–9.

[12]*Johnson v. JPMorgan Chase Bank, N.A.*, No. 4:12-cv-285, 2013 U.S. Dist. LEXIS 81243, at *36–37 (E.D. Tex. Apr. 10, 2013) (quoting *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.—Dallas 2008)).

[13]*Id.*, 2013 U.S. Dist. LEXIS 81243, at *37.

Texas Debt Collection Act [Tex. Fin. Code] § 392.302(4) prohibits a debt collector from "causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number."[14] That prohibition is the Act's only provision whose violation Mr. Miller alleges.[15] But his amended complaint fails to state a claim as to that prohibition because the amended complaint alleges no conduct from which a factfinder could plausibly infer an intent to harass, and because call volume alone cannot constitute harassment.

Section 392.302(4) is substantially similar to the corresponding federal statute, 15 U.S.C. § 1692d(5), which likewise prohibits "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."[16] Where the Texas debt-collection statute is practically the same as its federal counterpart, a court applying the Texas statute may look to cases applying the federal statute for guidance: "Because the FDCPA and TDCA are isomorphic (that is, they share the same general structure but are identified by different names), the same analysis this Court applied to assess the sufficiency of the FDCPA claim will be utilized to determine the adequacy of the TDCA claim."[17]

---

[14]Tex. Fin. Code § 392.302(4).

[15]*See* Am. Compl., ¶ 38 at 7.

[16]15 U.S.C. § 1692d(5).

[17]*Fiddick v. Bay Area Credit Serv., LLC*, No. 3:18-cv-00416, 2019 U.S. Dist. LEXIS 70177, at *12 (S.D. Tex. Apr. 25, 2019); *accord Hsu v. Enhanced Recover Co., LLC*, No. 1:17-cv-128-RP, 2018 U.S. Dist. LEXIS 2082, at *17 (W.D. Tex. Jan. 5, 2018) ("because the language from each provision closely mirrors the language from the corresponding provisions in the FDCPA, the Court will interpret the TDCA provisions at issue here in the same fashion as it interprets their federal counterparts").

4

A.    **The new allegation in the amended complaint about inconvenient timing is vague, conclusory, and subjective, and does not plausibly allege an intent to harass.**

The statute prohibits a debt collector from "causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, *with the intent to harass* a person at the called number."[18] The statute focuses the inquiry on the collector's intent, not on the calls' effect on the debtor. The amended complaint alleges no conduct from which a factfinder could plausibly infer an intent to harass.

Target moved to dismiss Mr. Miller's original complaint because it failed to state a claim under the Texas Debt Collection Act for causing a telephone to ring "repeatedly or continuously" with intent to harass. Target argued that

> Courts around the country have repeatedly held that call volume alone cannot constitute harassment without some other harassing conduct . . . The U.S. Court of Appeals for the Fifth Circuit has held that the same rule applies under the Texas Debt Collection Act: "courts generally require both a great volume of phone calls and extenuating circumstances, such as *making those calls at odd hours* or threatening personal violence." Another federal district court in Texas has likewise held that "where courts have found that plaintiffs have stated a claim for harassment or abuse, a high volume of phone calls is typically accompanied by allegations of other objectionable conduct," such as "threatened foreclosure; assessed monthly late fees; and reported derogatory information to the credit reporting agencies" or "*[t]hreatening and intimidating calls to a consumer at an inconvenient time or place*."[19]

Mr. Miller and his attorneys attempted to cure their defective pleading by seizing on the language about "odd hours" and "[t]hreatening and intimidating calls . . . at an inconvenient time," so they added a new allegation in their amended complaint that

---

[18]Tex. Fin. Code § 392.302(4) (emphasis added).

5

Target "called Plaintiff at incredibly inconvenient, obnoxious, or embarrassing times, including while at work, prior to Plaintiff's normal waking hours, and late in the evening."[20]

It is unclear from this new allegation exactly what Mr. Miller is trying to claim. The allegation of "incredibly inconvenient, obnoxious, or embarrassing times" is vague, conclusory, and subjective. But the detail with which the amended complaint tries to flesh out the allegation is also vague and subjective: "while at work, prior to Plaintiff's normal waking hours, and late in the evening." Target was calling Mr. Miller at only one number, on his personal cellular telephone,[21] so it had no way of knowing when his phone was with him "at work," and it therefore could not have been acting with an "intent to harass" by calling him there. Target also had no way of knowing what Mr. Miller's "normal waking hours" were, and the amended complaint doesn't suggest them; if the amended complaint had alleged that Target was calling at 6 a.m., then it would plausibly allege a violation — but if Target was calling at 11 a.m. and Mr. Miller normally sleeps till noon, then there would be no plausible inference that Target was calling with an "intent to harass." Likewise, "late in the evening" is vague and subjective: if the amended complaint had alleged that Target was calling at midnight, then it would plausibly allege a violation — but if Mr. Miller's idea of "late in the evening" is 8 p.m.,

---

[19]ECF Doc. 9 at 12–13 (emphasis added, footnotes omitted). This motion renews that argument below at 11–12.

[20]Am. Compl. [ECF Doc. 10], ¶ 24 at 4.

[21]*See id.*, ¶ 16 at 3 ("calls on his cellular telephone; (XXX) XXX-5844").

and Target had no reason to know that 8 p.m. was inconvenient for him, then there would be no plausible inference that Target was calling with an "intent to harass."

The Texas Debt Collection Act does not offer explicit guideposts about when a debt-collection call is being made "at odd hours"[22] or "at an inconvenient time"[23] — that is, times when an "intent to harass" may be presumed — but its federal counterpart does. The Fair Debt Collection Practices Act prohibits debt-collection communication "at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer" and provides that "[i]n the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location."[24] Target wasn't calling Mr. Miller outside that 13-hour window when collection calls are presumptively lawful, and the amended complaint doesn't say otherwise; indeed, the vague and subjective terms in which the amended complaint couches its new allegation — "prior to Plaintiff's normal waking hours, and late in the evening" — seems like an effort to avoid acknowledging that Target was *not* calling outside that window. But if Mr. Miller is claiming that Target was calling outside lawful hours, then his pleading should say so.

The federal statute also prohibits calls "at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits

---

[22]*Robinson v. Wells Fargo Bank, N.A.*, 576 F. App'x 358, 362 (5th Cir. 2014).

[23]*Id.* (quoting *Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994)).

the consumer from receiving such communication."[25] The amended complaint doesn't allege that Target knew when Mr. Miller was "at work," let alone that Target knew such calls were inconvenient.

A complaint shouldn't leave the defendant guessing about what the defendant is being accused of: "A properly pleaded complaint must give 'fair notice of what the claim is and the grounds upon which it rests,'"[26] and "must contain sufficient allegations of underlying facts to . . . enable the opposing party to defend itself effectively."[27] The new allegation sweeps so broadly that it covers both conduct that could be illegal, and conduct that is certainly innocent. The amended complaint's new allegation is therefore insufficient to "nudge [this claim] across the line from conceivable to plausible."[28]

### B. The amended complaint alleges no other conduct from which a factfinder could plausibly infer an intent to harass.

The amended complaint does allege that Target's calls were made "intentionally with the purpose of coercing Plaintiff to pay the alleged debt."[29] But it is well established that a creditor is entitled to contact a delinquent debtor in an attempt to collect the delinquent balance: "[a] creditor has a right to take reasonable action to pursue his debtor

---

[24]15 U.S.C. § 1692c(a)(1).

[25]15 U.S.C. § 1692c(a)(3).

[26]*Sims v. City of Madisonville*, 894 F.3d 632, 643 (5th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 698–99 (2009)).

[27]*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

[28]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[29]Am. Compl. [ECF Doc. 10], ¶ 39 at 7.

8

and persuade payment,"[30] and "[p]laintiffs cannot expect a court to tolerate evasion of lawful debts."[31]

The amended complaint also alleges that, in a single instance, Mr. Miller "asked for calls to his cell phone to cease and for Defendant to only contact him by mail."[32] But the debt-collection statutes do not entitle a debtor to force a creditor to stop contacting him, or to contact him only in a particular way, simply by asking.[33] The Texas Debt Collection Act does specify certain circumstances under which a creditor must "cease collection efforts," all of which involve the correction of disputed information in a third-party debt collector's or a credit bureau's files.[34] The amended complaint alleges no such circumstance.

---

[30]*Charvat v. NMP, LLC*, 656 F.3d 440, 453 (6th Cir. 2011); *see Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 725 (S.D. Tex. 2011) (citing *Gorman v. Wolpoff & Abramson, LLP*, 435 F. Supp. 2d 1004, 1012 (N.D. Cal. 2006), *rev'd on other grounds*, 584 F.3d 1147 (9th Cir. 2009), for the proposition that the debt-collection statutes are not intended "to completely bar any debt collection calls"); *Saltzman v. I.C. Sys., Inc.*, No. 09-10096, 2009 U.S. Dist. LEXIS 90681, at *22 (E.D. Mich. Sept. 20, 2009) ("the FDCPA does not prohibit . . . legitimate attempts to contact a debtor").

[31]*Walker v. Westlake Fin. Servs., LLC*, No. 19-cv-6921, 2020 U.S. Dist. LEXIS 105794, at *8 (N.D. Ill. June 17, 2020) (citing *Channell v. Citicorp Nat'l Servs., Inc.*, 89 F.3d 379, 385 (7th Cir. 1996)).

[32]Am. Compl., ¶ 21 at 4.

[33]*See Saltzman*, 2009 U.S. Dist. LEXIS 90681, at *20–21 ("Although Plaintiff alleges that she requested Defendant to stop calling her, she did not send Defendant a cease and desist letter, dispute the amount owed, or provide evidence that Defendant has acted in a manner that would be actionable as harassment, oppression or abuse.").

[34]*See* Tex. Fin. Code § 392.202(a); Tex. Fin. Code § 392.202(c)(2); Tex. Fin. Code § 392.202(d)(3).

As long as the creditor is not acting "with the intent to harass a person at the called number," the Act does not prohibit a creditor from calling a debtor about a delinquent debt even if the debtor prefers not to get such calls. An intent to collect is not an intent to harass, and a debt-collection call isn't illegal just because it is unwanted. The amended complaint alleges no conduct from which a factfinder could plausibly infer an intent to harass.

C. **Call volume alone cannot constitute harassment.**

The amended complaint alleges that, on six days in July, August, and December 2019, "Defendant called Plaintiff four (4) times,"[35] and that "[b]etween July 5, 2019 and December 26, 2019, following Plaintiff's request for all calls to cease, Defendant contacted Plaintiff no less than [230] times."[36] The amended complaint does not allege that Target reached Mr. Miller except for the one conversation on July 5, 2010,[37] and does not allege that any call occurred involved any harrassing, offensive, profane, rude, threatening, or other egregous conduct.

Courts around the country have repeatedly held that call volume alone cannot constitute harassment without some other harassing conduct: "proof of numerous calls alone does not create a jury issue where the creditor calls only to inform or remind the debtor of the debt, to determine reasons for nonpayment, to negotiate differences or to

---

[35] Am. Compl. [ECF Doc. 10], ¶ 23 at 4.

[36] *Id.*, ¶ 22.

[37] *See id.*, ¶¶ 19–21 at 3–4.

persuade the debtor to pay without litigation."[38] The U.S. Court of Appeals for the Fifth Circuit has held that the same rule applies under the Texas Debt Collection Act: "courts generally require both a great volume of phone calls and extenuating circumstances, such as making those calls at odd hours or threatening personal violence."[39] Another federal district court in Texas has likewise held that "where courts have found that plaintiffs have stated a claim for harassment or abuse, a high volume of phone calls is typically accompanied by allegations of other objectionable conduct,"[40] such as "threatened foreclosure; assessed monthly late fees; and reported derogatory information to the credit

---

[38] *Borneisen v. Capital One Fin. Corp.*, No. 8:09-CV-02539-T-17TGW, 2011 U.S. Dist. LEXIS 75712, at *34 (M.D. Fla. July 13, 2011), *aff'd on other grounds*, 490 F. App'x 206 (11th Cir. 2012); *accord Lewis v. Portfolio Recovery Assocs., LLC*, No. 1:13-cv-00043, 2015 U.S. Dist. LEXIS 129591, at *19 (M.D. Tenn. Sept. 25, 2015); *Lardner v. Diversified Consultants Inc.*, No. 1:13-cv-22751-UU, 2014 U.S. Dist. LEXIS 64205, at *23–25 (S.D. Fla. May 1, 2014) ("Summary judgment is routinely granted in favor of debt collectors where the party alleging a violation of the FDCPA does not present evidence of harassing conduct other than a high volume of calls."); *Lopez v. Prof'l Collection Consultants*, No. CV 11-3214 PSG (PLAx), 2013 U.S. Dist. LEXIS 36612, at *8 (C.D. Cal. Feb. 26, 2013) ("without providing evidence that Defendant called Plaintiff immediately after hanging up, called at odd hours, called at the debtor's place of employment, or called multiple times in a single day, the number of phone calls alone does not create a triable issue of fact"); *Valle v. Nat'l Recovery Agency*, No. 8:10-cv-2775-T-23MAP, 2012 U.S. Dist. LEXIS 69564, at *4 (M.D. Fla. May 18, 2012); *Daniel v. W. Asset Mgmt., Inc.*, No. 11-11034, 2011 U.S. Dist. LEXIS 124788, at *15 (E.D. Mich. Oct. 28, 2011) ("Plaintiff must offer evidence beyond the mere number of calls to support her allegation that the telephone calls were harassing, oppressive, or abusive."); *Carman v. CBE Group, Inc.*, 782 F. Supp. 2d 1223, 1230 (D. Kan. 2011); *Arteaga v. Asset Acceptance, LLC*, 733 F. Supp. 2d 1218, 1238 (E.D. Cal. 2010).

[39] *Robinson v. Wells Fargo Bank, N.A.*, 576 F. App'x 358, 362 (5th Cir. 2014).

[40] *Clayton v. Asset Plus Cos., LP*, No. 4:13-cv-2862, 2014 U.S. Dist. LEXIS 160087, at *7 (S.D. Tex. Nov. 14, 2014).

reporting agencies"[41] or "[t]hreatening and intimidating calls to a consumer at an inconvenient time or place."[42]

Courts that have considered debt-collection claims based on call volume alone have held that such claims are insufficient as a matter of law. The amended complaint alleges that Target made 230 calls to Mr. Miller over a nearly six-month period[43] — an average of about 1.3 calls per day — and called as often as four times per day, albeit only on six days.[44] The amended complaint alleges only a single instance where Target actually reached him.[45] Another federal court in Texas held in *Clingaman v. Certegy Payment Recovery Services* that, where the number of calls — including calling up to four times a day — was the "sole basis" for a claim of harassment, the claim failed as a matter of law.[46] The *Clingaman* court cited other cases where the defendant was entitled to judgment for calling up to seven times a day,[47] for calling 149 times in two months

---

[41]*Id.* (quoting *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 357 (6th Cir. 2012)).

[42]*Id.* (quoting *Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994)).

[43]Am. Compl. [ECF Doc. 10], ¶ 22 at 4.

[44]*Id.*, ¶ 23.

[45]*Id.*, ¶¶ 19 at 3.

[46]*Clingaman v. Certegy Payment Recovery Servs.*, No. H-10-2483, 2011 U.S. Dist. LEXIS 56368, at *11–12 (S.D. Tex. May 26, 2011) ("the most calls Certegy made in one day was four").

[47]*Id.*, 2011 U.S. Dist. LEXIS 56368, at *12 (citing *Tucker v. CBE Grp., Inc.*, 710 F. Supp. 2d 1301, 1303 (M.D. Fla. 2010)).

(averaging 2.4 calls per day),[48] and for calling up to 60 times in a five-week period (averaging 1.7 calls per day).[49] The *Clingaman* court noted that the pattern of calls "suggests a 'difficulty of reaching Plaintiff, rather than an intent to harass'"[50] — "a legitimate, albeit persistent, effort to reach [the debtor]."[51]

Call volume alone cannot constitute harassment. The amended complaint alleges no conduct from which a factfinder can plausibly infer an intent to harass. The amended complaint fails to state a claim under the Texas Debt Collection Act for causing a telephone to ring "repeatedly or continuously" with intent to harass.

II.     **The amended complaint fails to state a claim for intrusion upon seclusion because the tort requires some "prying" into the plaintiff's private domain or affairs, and intrusion by means of debt-collection calls requires "extenuating circumstances," neither of which the amended complaint alleges.**

Mr. Miller's third claim — for invasion of privacy — is based on the same calls and the same facts as his claims under the Telephone Consumer Protection Act and the Texas Debt Collection Act:

41.     Plaintiff incorporates herein by reference all of the above paragraphs of this complaint as though fully set forth herein at length.

42.     Restatement of the Law, Second, Torts, § 652(b) defines intrusion upon seclusion as, "One who intentionally intrudes . . . upon the

---

[48]*Id.* (citing *Carman v. CBE Grp., Inc.*, 782 F. Supp. 2d 1223 (D. Kan. 2011)).

[49]*Id.* (citing *Saltzman v. I.C. Sys., Inc.*, 2009 U.S. Dist. LEXIS 90681, 2009 WL 3190359, at *6 (E.D. Mich. Sept. 30, 2009)).

[50]*Id.* at *12–13 (quoting *Saltzman*, 2009 U.S. Dist. LEXIS 90681, at *21 (quoting *Millsap v. CCB Credit Services, Inc.*, No. 07-11915, 2008 U.S. Dist. LEXIS 110149, at *24 (E.D. Mich. Sept. 30, 2008))).

[51]*Saltzman*, 2009 U.S. Dist. LEXIS 90681, at *22.

13

solitude or seclusion of another, or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person."

43.    Defendant violated Plaintiff's privacy. Defendant's violations include, but are not limited to, the following:

  a.    Defendant intentionally intruded, physically or otherwise, upon Plaintiff's solitude and seclusion by engaging in harassing phone calls in an attempt to collect on an alleged debt despite an express request for the calls to cease.

  b.    The number and frequency of the telephone calls to Plaintiff by Defendant after a request for the calls to cease and an explanation that Plaintiff could not afford to make a payment constitute an intrusion on Plaintiff's privacy and solitude.

  c.    The harassing, embarrassing, and inconvenient timing of the calls evidence an intent to harass and embarrass Plaintiff in order to coerce Plaintiff into making a payment Defendant knew Plaintiff could not financially afford.

  d.    Defendant [sic] conduct would be highly offensive to a reasonable person as Plaintiff received calls that often-interrupted Plaintiff's work and sleep schedule.

  e.    Defendant's acts, as described above, were done intentionally, with full knowledge of Plaintiff's financial hardship, and with the purpose of coercing Plaintiff to make a payment that Defendant knew Plaintiff could not afford.

44.    As a result of Defendant's violations of Plaintiffs privacy, Defendant is liable to Plaintiff for actual damages.[52]

The amended complaint adds no new facts in support of the Texas common-law claim.

The Restatement is both clear and explicit that an unwanted communication in an attempt to collect a debt is not necessarily an invasion of privacy, even where the creditor knows that the communication is unwanted: "A, a landlord, calls upon B, his tenant, at nine o'clock on Sunday morning, to demand payment of the rent, although he knows that B is not ready to pay it and that B objects to such a visit on Sunday. B is seriously

---

[52]Am. Compl. [ECF Doc. 10], ¶¶ 41–44 at 7–8.

annoyed. This is not an invasion of B's privacy."[53] An invasion of privacy can occur only if "the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence."[54]

Nothing in the amended complaint suggests that Target's calls rose anywhere near the level that they became "a substantial burden to [Mr. Miller's] existence." The amended complaint itself alleges no such burden. Target called, on average, just over once a day; there was no day where Target tried the number more than four times. Target reached Mr. Miller only once.

Under the Restatement, debt-collection calls do not become a "substantial burden" merely because they are "persistent."[55] Nor do they become a "substantial burden" merely because they are "annoying, embarrassing, and upsetting" to the debtor.[56] An invasion of privacy does not occur unless "the facts clearly demonstrate outrageous, rather than annoying or upsetting, conduct."[57] For example, one court dismissed an invasion-of-privacy claim where a debt collector called up to six times per day over a

---

[53]Restatement (Second) of Torts § 652B cmt. d, illus. 8 (1977).

[54]*Id.*

[55]*Rush v. Portfolio Recovery Assocs. LLC*, 977 F. Supp. 2d 414, 434 (D.N.J. 2013) ("a debt collector merely calling persistently does not by itself demonstrate a substantial burden on the recipient"); *Stuart v. AR Res., Inc.*, No. 10-3520, 2011 U.S. Dist. LEXIS 27025, at *18–21 (E.D. Pa. Mar. 16, 2011) (dismissing invasion-of-privacy claim despite allegations that debt collector called plaintiff persistently and used profane language).

[56]*Rush*, 977 F. Supp. 2d at 434 (quoting *Stuart*).

[57]*Id.*, 977 F. Supp. 2d at 436; *Oppenheim v. I.C. Sys., Inc.*, 695 F. Supp. 2d 1303, 1310 (M.D. Fla. 2010), *aff'd*, 627 F.3d 833 (11th Cir. 2010).

three-month period because "those calls did not rise to the requisite level of outrageous and unacceptable conduct contemplated by the tort of invasion of privacy based on intrusion."[58] The amended complaint alleges no such "outrageous" conduct.

Under Texas law, a claim for intrusion upon seclusion "is generally associated with either a physical invasion of a person's property or eavesdropping on another's conversation with the aid of wiretaps, microphones or spying."[59] The Restatement comments that an intrusion upon seclusion "may be by some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, [or] examining his private bank account,"[60] so one court has suggested that conduct such as "examining a person's bank records" without authorization may also constitute an intrusion upon seclusion.[61] But where the defendant

---

[58]*Oppenheim*, 695 F. Supp. 2d at 1310.

[59]*Cornhill Ins. PLC v. Valsamis, Inc.*, No. 95-20898, 1997 U.S. App. LEXIS 12773, at *11 (5th Cir. Feb. 7, 1997) (quoting *Wilhite v. H.E. Butt Co.*, 812 S.W.2d 1, 6 (Tex. App.—Corpus Christi–Edinburg 1991)); *Summerlin v. Barrow*, No. 4:17-cv-1016-A, 2018 U.S. Dist. LEXIS 41123, at * (N.D. Tex. Mar. 13, 2018) ("such an intrusion claim is typically associated with either a physical invasion of a person's property or eavesdropping"); *Bray v. Cadle Co.*, No. 4:09-cv-663, 2010 U.S. Dist. LEXIS 109470, at *47 (S.D. Tex. Oct. 14, 2010) ("[i]ntrusion upon seclusion is typically associated with either a physical invasion of a person's property or eavesdropping on another's conversation with the aid of wiretaps, microphones, or spying." (quoting *Tex. Comptroller of Public Accounts v. Attorney Gen.*, 244 S.W.3d 629, 636 (Tex. App.—Austin 2008)); *Shearer v. Shearer*, No. 12-14-00302-CV, 2016 Tex. App. LEXIS 5685, at *25 (Tex. App.—Tyler May 27, 2016).

[60]Restatement (Second) of Torts § 652B cmt. b (1977).

[61]*Bray*, 2010 U.S. Dist. LEXIS 109470, at *48.

16

has not physically entered the plaintiff's space, the tort requires some "prying" into the plaintiff's "private domain" or "private affairs."[62]

The amended complaint alleges no such "prying," only telephone calls made in a legitimate attempt to reach Mr. Miller about his delinquent account.

Where courts applying Texas law have entertained intrusion-upon-seclusion claims for debt-collection calls, the calls were accompanied by other "extenuating circumstances," such as "bomb and death threats,"[63] "the threat of jail,"[64] "calls . . . prior to normal waking or after normal retiring hours," or "a hostile, profane individual on the other end of the line."[65] The amended complaint alleges no such extenuating circumstances. The closest that it comes is its allegation in paragraph 36(c) of the "harassing, embarrassing, and inconvenient timing of the calls," presumably referring back to the allegation in paragraph 24 of calls "at incredibly inconvenient, obnoxious, or embarrassing times, including while at work, prior to Plaintiff's normal waking hours, and late in the evening" — but even that allegation stops short of alleging "calls . . . prior to normal waking or after normal retiring hours,"[66] since it refers only to *Mr. Miller's*

---

[62]*London v. Gums*, No. H-12-3011, 2014 U.S. Dist. LEXIS 16149, at *38 (S.D. Tex. Feb. 10, 2014); *Shearer*, 2016 Tex. App. LEXIS 5685, at *25; *Blanche v. First Nationwide Mortg. Corp.*, 74 S.W.3d 444, 455 (Tex. App.—Dallas 2002).

[63]*Escamilla v. United States*, No. EP-14-cv-00246-FM, 2015 U.S. Dist. LEXIS 184750, at *16–17 (W.D. Tex. Jan. 29, 2015) (citing *Household Credit Servs., Inc. v. Driscol*, 989 S.W.2d 72, 85 (Tex. App.—Dallas 1998)).

[64]*London*, 2014 U.S. Dist. LEXIS 16149, at *39.

[65]*Driscol*, 989 S.W.2d at 85.

[66]*Id.*

waking and retiring hours, without alleging that Target had any reason to know of those hours.

## Conclusion

The amended complaint fails to state a claim under the Texas Debt Collection Act for causing a telephone to ring "repeatedly or continuously" with intent to harass. The new allegation in the amended complaint about inconvenient timing is vague, conclusory, and subjective, and does not plausibly allege an intent to harass. The amended complaint alleges no other conduct from which a factfinder could plausibly infer an intent to harass. Call volume alone cannot constitute harassment.

The amended complaint fails to state a claim for intrusion upon seclusion because the tort requires some "prying" into the plaintiff's private domain or affairs, and intrusion by means of debt-collection calls requires "extenuating circumstances," neither of which the complaint alleges.

Therefore, Target respectfully asks that this Court dismiss Mr. Miller's second claim, under the Texas Debt Collection Act, and his third claim, for invasion of privacy, for failure to state a claim upon which relief can be granted.

June 25, 2020.

BARNES & THORNBURG LLP

/s/ Brian Melendez

_____

Brian Melendez, Minn. License No.
    0223633 (admitted pro hac vice), Lead
    Attorney
Suite 2800
225 South Sixth Street
Minneapolis, MN 55402-4662
Ph. 612.367.8734
Fax 612.333.6798
brian.melendez@btlaw.com

in association with

Lucas C. Wohlford, Texas Bar No.
    24070871
Suite 700
2121 North Pearl Street
Dallas, TX 75201-2469
Ph. 214.258.4106
Fax 214.258.4199
lwohlford@btlaw.com

Attorneys for Defendant
    Target Enterprise, Inc. (misnamed as
    "Target Card Services")

19

**Certificate of Service**

Service on known Filing Users will be automatically accomplished through the Notice of Electronic Filing. Each Party is represented by counsel, and each Party's counsel is a Filing User.

June 25, 2020.

BARNES & THORNBURG LLP

s/ Brian Melendez

_____
Brian Melendez, License No. 0223633
    (Minn.) (admitted pro hac vice)
Suite 2800
225 South Sixth Street
Minneapolis, MN 55402-4662
Ph. 612.367.8734
Fax 612.333.6798
brian.melendez@btlaw.com